IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICOLE F. HOVERMAN,

                Plaintiff,

  v.

KILOLO KIJAKAZI,
Acting Commissioner of the Social Security
Administration,

                Defendant.

OPINION and ORDER

22-cv-414-jdp

---

Plaintiff Nicole F. Hoverman seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that Hoverman was not disabled within the meaning of the Social Security Act. Hoverman contends the administrative law judge (ALJ) Deborah Giesen erred by (1) relying on irrelevant evidence when considering Hoverman's subjective symptoms of mental health impairments, (2) failing to give sufficient weight to Hoverman's treating therapist, and (3) failing to account for all of the findings of the state agency psychologists. The ALJ committed a minor error by failing to consider reasons for Hoverman's failure to comply with recommended treatment. But that error was harmless. The ALJ otherwise provided a thorough, well-reasoned decision that the court affirms.

BACKGROUND

Hoverman applied for disability insurance benefits and supplemental security income in July 2017, alleging that she had been disabled since July 1, 2013. R. 22.[1] On the advice of counsel, Hoverman subsequently amended the alleged disability onset date to July 6, 2016. R. 281. She has been denied benefits at the administrative level twice, and this is her second appeal to this court. After she filed her first appeal, the commissioner stipulated to a remand so that the ALJ could reevaluate Hoverman's residual functional capacity, consider additional vocational expert testimony, and issue a new decision. *See Hoverman v. Saul*, No. 20-cv-1050-jdp (W.D. Wis. Aug. 9, 2021).

In a 24-page decision, the ALJ found that Hoverman suffered from the following severe impairments: asthma, chronic obstructive pulmonary disease, anxiety disorder, depression, and substance abuse disorder in remission. R. 628–51. Based on these severe impairments, the ALJ found that Hoverman had the residual functional capacity (RFC) to perform light work with numerous nonexertional limitations, including the following:

- "simple, routine tasks involving simple work-related decisions and not requiring a fast production rate pace or strict production quotas";
- "occasional interaction with coworkers, but no work with coworkers in collaborative environment or requiring her to participate in team tasks"; and
- "no interaction with the public."

---

[1] Record cites are to the administrative transcript located at Dkt. 11.

R. 635. The ALJ also included limitations on the physical working environment to address Hoverman's physical impairments. Hoverman does not contest the ALJ's findings as to her physical impairments, so they are not relevant to her appeal.

Based on the testimony of a vocational expert, the ALJ found that Hoverman was not disabled because she could perform jobs that are available in significant numbers in the national economy, such as collator operator, routing clerk, and sorter. R. 650.

Hoverman now appeals. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Hoverman contends that the ALJ committed three errors, which the court addresses in turn.

**A. The ALJ's assessment of Hoverman's subjective complaints**

Courts must defer to an ALJ's credibility determination unless it is patently wrong. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Hoverman challenges the ALJ's determination that the record did not support the degree of functional limitation that Hoverman alleged. Specifically, Hoverman contends that the ALJ erred in (1) concluding that evidence of Hoverman's activities of daily living showed that she could engage in full-time work; and (2)

relying on Hoverman's non-compliance with treatment as a reason to discount her statements about the severity of her symptoms. Dkt. 14 at 18–19. Neither of these issues requires remand.

1. **Activities of daily living**

The ALJ conducted a thorough review of the evidence when considering whether Hoverman's mental impairments caused the extent of functional limitation she claimed. This evidence includes Hoverman's testimony about the effects of her anxiety and depression before the ALJ at hearings in January 2020 and March 2022, in which Hoverman said she struggles to interact with people, does not like to leave the house, and, on average, only goes out two times a week when she needs to go to a doctor appointment or the grocery store. R. 636; R. 676. In addition to Hoverman's testimony about her symptoms, the ALJ considered treatment records from various mental health and medical care providers from 2017 through 2022, details from which the ALJ discussed at length. R. 636–44. The ALJ noted that Hoverman reported panic attacks and difficulty leaving the house during psychiatric evaluations to renew her medications. R. 641–42. The ALJ also observed that Hoverman's treatment records from psychotherapy from February 2019 through April 2021 showed that she reported struggling to leave the house, with some periods of increased depression, but that she also reported making progress and numerous instances where she successfully left the house to go out with her boyfriend or family. R. 641–44.

The ALJ determined that the record showed Hoverman was able to leave the house and interact with others more than she claimed. The ALJ noted that Hoverman had testified that she did not like to leave the house, that on some days just leaving the house would cause panic attacks, and that sometimes she would stay in bed all day. R. 636, 645. But the ALJ accurately cited many instances when Hoverman reported to her medical providers that she went

4

shopping, engaged in outdoor recreational activities, and went on social outings with her boyfriend. R. 645. The ALJ reasoned that Hoverman's account of the severity of her subjective symptoms was contradicted by her reports of engaging in activities outside the home and her having many appointments with medical providers where she had no problem interacting with them. R. 645.

The court concludes that the ALJ did not err in evaluating Hoverman's activities of daily living when assessing the alleged severity of her mental impairments. When evaluating the intensity and persistence of a claimant's symptoms, an ALJ should consider the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). It was appropriate for the ALJ to consider Hoverman's daily activities, including her reports of voluntarily engaging in activities outside the home, when evaluating the credibility of Hoverman's claims that her depression and anxiety disorder prevented her from getting out of bed or leaving the house. *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022); *see also*, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (explaining that an ALJ appropriately used reports of the claimant's activities to evaluate the claimant's "statements concerning the intensity, persistence, or limiting effects of her symptoms").

Hoverman contends that the ALJ relied on the evidence of occasional normal activities outside the home as evidence that Hoverman could engage in full-time work. This is incorrect. The ALJ did not find that Hoverman's activities outside the home meant that she could tolerate a full-time competitive job. Instead, the ALJ considered Hoverman's activities of daily living as part of the ALJ's evaluation of her statements about the severity of her symptoms and limitations. Hoverman argues that the evidence of her having left the house on isolated occasions is not probative of whether Hoverman was exaggerating the significant problems caused by her anxiety and depression because individuals living with mental illness have better

5

and worse days. Dkt. 14 at 19. But this argument goes to the weight the ALJ gave that evidence, not whether the ALJ's assessment of Hoverman's credibility was patently wrong.  The court's task here is not to reweigh evidence. The ALJ did not err by relying on evidence of Hoverman's daily activities and built a logical bridge from that evidence to the finding that Hoverman's mental impairments limited her less than she alleged.

2. **Compliance with treatment**

Hoverman contends that the ALJ erred by relying on her failure to follow up with therapy as a reason to discount Hoverman's claims about the degree of her functional limitations. The ALJ cited several instances in which medical providers noted that she failed to follow up with referrals or treatment and that Hoverman was discharged from therapy services for failing to follow up in August 2017 and again in April 2021. R. 639–40, 644. An ALJ may consider a claimant's failure to seek treatment or to follow prescribed treatment when evaluating the intensity and persistence of a claimant's subjective complaints. SSR 16-3p. But an ALJ must not discount an individual's subjective complaints for failure to seek or comply with treatment without considering possible alternative reasons for the failure. *Id.*; *see also*, *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). The ALJ erred by failing to address the possible reasons that Hoverman could have had for failing to follow up on her therapy and comply with instructions to stop using alcohol and marijuana.

The court concludes that this error does not warrant reversal under the substantial evidence standard because the ALJ identified several other pieces of relevant evidence that support the ALJ's determination that Hoverman's functional limitations were less significant than she alleged. To make that determination, the ALJ relied on objective medical evidence, Hoverman's course of medical treatment, and Hoverman's activities. In addition to the

6

evidence of Hoverman's activities outside the home discussed above, the ALJ cited treatment notes showing that that Hoverman largely remained on the same medication over the course of years of treatment and that her providers reported exams with "no or few psychiatric or mental status exam deficits." R. 634–44. The ALJ reasoned that Hoverman's stable course of treatment also contradicted the subjective symptoms Hoverman reported. This reasoning builds a logical bridge between that evidence and the ALJ's determination. Where an ALJ has an alternative valid reason for an adverse credibility finding the ALJ's determination is not patently wrong. *See Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010); *cf. Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Setting aside the ALJ's reference to Hoverman's failure to follow up on treatment, the ALJ's conclusion that Hoverman had capacity to work is still supported by substantial evidence.

B.  **Treating therapist's opinions**

Hoverman contends that the ALJ failed to properly weigh opinion evidence from the licensed clinical social worker who treated her. Dr. Laura Wrenn submitted a psychiatric review technique form in March 2019 that said Hoverman has marked limitations in the areas of interacting with others and adapting or managing oneself. R. 527. The ALJ provided the following three reasons for finding Dr. Wrenn's opinion unpersuasive: (1) Dr. Wrenn didn't provide any narrative response, analysis, or objective medical findings to explain why she checked boxes saying Hoverman had a marked limitation; (2) Dr. Wrenn provided the opinion without having "a particularly long treatment history" with Hoverman; and (3) the marked limitation findings are inconsistent with other evidence in the record. R. 648. The court will address each of these issues in turn.

7

First, Hoverman contends that the ALJ failed to provide insufficient justification for discounting Dr. Wrenn's opinion because of the format in which it was given. Dr. Wrenn's opinion about the degree of Hoverman's limitations appears as checked boxes on a form that gives options from "none" to "extreme" with a separate option of "insufficient evidence." R. 539. Hoverman concedes that Dr. Wrenn did not provide an explanation for her opinion but contends that the ALJ erred by relying on the format of the opinion as a reason to find it unpersuasive without addressing Dr. Wrenn's treatment notes and other evidence in the record that supported the opinion. Hoverman relies on *Larson v. Astrue* to support its argument, which says "by itself a check-box form might be weak evidence," but "the form takes on greater significance when it is supported by medical records." 615 F.3d 744, 751 (7th Cir. 2010). But the ALJ's reasoning is consistent with *Larson*. The ALJ appropriately concluded that the lack of explanation or objective medical evidence to support Dr. Wrenn's marked limitation finding was a reason to discount the opinion. And the ALJ already analyzed Dr. Wrenn's treatment notes when assessing Hoverman's subjective complaints so the ALJ did not fail to consider evidence that would have supported Dr. Wrenn's opinion. An ALJ need not repeat the same factual analysis after explaining her reasoning elsewhere in the opinion. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). The ALJ did not err in discounting Dr. Wrenn's marked limitation finding on the basis that Dr. Wrenn provided no explanation or objective medical evidence to support it.

Second, Hoverman contends that the ALJ's reasoning about the length of Dr. Wrenn's treatment relationship with Hoverman is illogical and internally inconsistent with the weight that the ALJ gave to the opinions of the state agency consulting psychologists who did not examine Hoverman or review medical evidence from the years after they gave their opinions.

8

Two state agency psychologists opined that Hoverman had moderate limitations in each of the four categories of mental functioning. R. 83–84, 113–14. The ALJ found them somewhat persuasive and concluded that Hoverman had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. Hoverman argues that this reasoning is inconsistent with the ALJ's discounting Dr. Wrenn's opinion because she had only seen Hoverman a handful of times before giving it.

But Hoverman's argument compares apples and oranges. When an ALJ evaluates the opinion of a treating medical provider, the ALJ should consider the length of the treatment relationship between a medical provider and the claimant when deciding how much weight to give the opinion because it is relevant to the ALJ's personal evaluation of the claimant. 20 C.F.R. § 404.1520c(c)(3)(i). In contrast, state agency psychological consultants frequently provide opinions based solely on medical records and ALJs are required to consider those opinions because "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). Here, when considering how much weight to give the consultants, the ALJ expressly noted that the record here had "been substantially supplemented over the 3 to 3.5 year period since" they performed their reviews and only found the state agency consultants somewhat persuasive. R. 647. The ALJ also accurately noted that Dr. Wrenn did not have a long treatment history with Hoverman at the time she provided her opinion. R. 648. The ALJ did not err in citing this as a reason to discount Dr. Wrenn's opinion.

Third, Hoverman contends that the ALJ cherry picked evidence to find Dr. Wrenn's conclusion inconsistent with the record while failing to credit the evidence that would support Dr. Wrenn's opinion. Hoverman also contends that the ALJ failed to explain how the activities

9

of daily living and recreational outings the ALJ cited were inconsistent with a marked limitation in interacting with others. Specifically, Hoverman points out that activities such as gardening, fishing, and going to the mailbox do not require social interaction with anyone outside Hoverman's family. Dkt. 14 at 15.

The court has already explained that the ALJ adequately addressed Hoverman's allegations that her anxiety caused her significant problems leaving the home and properly relied on evidence of Hoverman's activities outside the home to find her limitations less severe than alleged in her subjective complaints. It is reasonable for an ALJ to discount a medical expert's report that merely repeats subjective complaints that the ALJ found not credible. *See Karger v. Astrue*, 566 F. Supp. 2d 897, 907 (W.D. Wis. 2008) (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995)). The ALJ did not need not conduct the same analysis of Hoverman's subjective symptoms to explain her determination that a marked limitation in interacting with others was not consistent with the overall record.

The court concludes that substantial evidence supports the ALJ's reasons for finding Dr. Wrenn's opinion unpersuasive.

## C. State agency consulting psychologist opinions

Hoverman contends that the ALJ erred by failing to adequately account for the findings of the state agency psychological consultants that the ALJ found persuasive. State agency psychologists Dr. Frank Orosz and Dr. Joseph Cools opined that Hoverman had moderate limitations in all four categories of mental functioning assessed for a mental disability claim: understanding, remembering and applying information; social interactions with others; the ability to concentrate, persist, or maintain pace; and adapting and managing herself. R. 83–85, 113–15. The ALJ found these opinions somewhat persuasive. R. 647. The ALJ concluded that

Hoverman had moderate limitations in her abilities to interact with others and her ability to concentrate, persist, or maintain pace. But the ALJ decided that the record did not support moderate limitations in the other two categories of mental functioning. *Id.* The ALJ's RFC determination incorporated the narrative portion of the state agency psychologists' assessment of Hoverman's moderate limitations in social interactions and ability to concentrate, persist, or maintain pace. Hoverman raises two issues with the ALJ's RFC determination related to the agency psychologists.

First, Hoverman contends that the ALJ's RFC assessment omits the state agency psychologists' finding that Hoverman could only handle "brief, infrequent, and superficial contact" with coworkers and the public. R. 84. The ALJ determined that Hoverman's anxiety limited her to having no interactions with the public. As for interactions with coworkers, the ALJ determined that Hoverman could "perform work with occasional interaction with coworkers but no work with coworkers in [a] collaborative environment or requiring her to participate in team tasks." R. 647. The ALJ explained that this limitation was based on the opinions of the state agency consultants but that she had put it "in vocationally relevant terms." R. 647. The ALJ did not elaborate on what she meant by "vocationally relevant terms," but the court concludes that this refers to the ALJ framing the limitation on interactions with coworkers as "no collaborative environment" and no "team tasks."

Hoverman is incorrect that the ALJ did not limit the quality or substance of Hoverman's interactions with coworkers. It is true that the ALJ did not use the terms "brief, infrequent, and superficial" to limit Hoverman's interactions with coworkers and the public. But "an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations." *Recha v. Saul*, 843 F. App'x 1, 4 (7th

11

Cir. 2021). The ALJ found persuasive the state agency psychologists' opinion that Hoverman has social limitations due to her anxiety. The ALJ incorporated that opinion by limiting the quantity of interactions with coworkers to "occasional" and by limiting the quality of the interactions with coworkers to no collaborative environment or team tasks. Hoverman fails to explain how the ALJ's wording of the limitation on the quantity and type of interactions with coworkers was less restrictive than a limitation of "brief, infrequent, and superficial interactions." The ALJ did not fail to account for the state agency psychologists' opinion.

Second, Hoverman contends that the ALJ failed to address all the concentration, persistence, and pace limitations that Drs. Orosz and Cools identified. The psychologists found Hoverman moderately limited in four checklist areas related to concentration, persistence, and pace:

- The ability to carry out detailed instructions;
- The ability to maintain attention and concentration for extended periods;
- The ability to work in coordination with or in proximity to others without being distracted by them;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

R. 83–84, 113–114. The psychologists then explained these limitations in narrative form and opined that Hoverman was "capable of carrying out simple 1–3 step directions," that she "may have more difficulties with detailed instruction [due to] symptoms of anxiety," and that she should have "no fast paced tasks or quotas." R. 84, 114. The ALJ adopted the narrative form of the state agency psychologists' concentration, persistence, or pace limitations, deciding that

12

Hoverman could perform "simple, routine tasks involving simple work-related decisions and not requiring a fast production rate pace or strict production quotas." R. 647. Hoverman says that this does not address her limited ability to work in coordination with or in proximity to others without being distracted by them, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and her ability to perform at a consistent pace without an unreasonable number and length of rest periods.

An ALJ can reasonably rely on a consultant's narrative RFC assessment as along as the narrative adequately incorporates and translates the checklist limitations. *Pavlicek*, 994 F.3d at 783. Here, the psychologists' narrative explanation of Hoverman's limitations effectively translates their moderate limitation findings for ability to maintain attention and concentration for extended periods of time and to complete a normal workday and workweek without interruptions from psychologically based symptoms by noting that Hoverman could have difficulties with detailed instructions due to symptoms of anxiety and limiting her to simple work. Restricting her to no fast-paced tasks or quotas addresses her limitation in performing at a consistent pace as well as her limitation in maintaining concentration for extended periods. And, as discussed above, the ALJ's assessment includes the limitation that Hoverman can only handle occasional interactions with coworkers but not a collaborative environment or team tasks, which incorporates the consultants' opinions about Hoverman's ability to work in coordination with or in proximity to others. Hoverman does not offer any explanation of how the ALJ's RFC assessment fails to address this restriction.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED. The clerk of court is directed to enter judgment in favor of the defendant and close this case.

Entered September 27, 2023.

BY THE COURT:

/s/ James D. Peterson
JAMES D. PETERSON
District Judge